1  HABERBUSH & ASSOCIATES, LLP
   DAVID R. HABERBUSH, ESQ., SBN 107190
2  VANESSA M. HABERBUSH, ESQ. SBN 287044
   LANE K. BOGARD, ESQ., SBN 306972
3  444 West Ocean Boulevard, Suite 1400
   Long Beach, CA 90802
4  Telephone: (562) 435-3456
   Facsimile:  (562) 435-6335
5  E-Mail: lbogard@lbinsolvency.com

6

7  Attorneys for Debtor and Debtor-in-Possession

8

9              UNITED STATES BANKRUPTCY COURT

10       CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

11 | In re                          | Case No. 2:18-bk-17000-ER

12 | KEITH BLACK RACING ENGINES, INC., | **Chapter 11**

13 | Debtor and Debtor-in-Possession. | **DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR ORDER AUTHORIZING THE SALE OF THE ESTATE'S INTERESTS IN SPECIFIC MACHINERY AND EQUIPMENT FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363; DECLARATION OF KENNETH BLACK IN SUPPORT**

**Hearing Date**
Date:  September 5, 2018
Time:  10:00 a.m.
Crtm:  1568
        255 E. Temple Street
        Los Angeles, CA 90012

_(sidebar)_ HABERBUSH & ASSOCIATES, LLP  ATTORNEYS AT LAW  444 WEST OCEAN BOULEVARD, SUITE 1400  LONG BEACH, CA 90802

**Table of Contents**

Page No.

MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       A.   Events Preceding the Bankruptcy Filing . . . . . . . . . . . . . . . . . . . . . . 3
       B.   Debtor's Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
       C.   Debtor's Creditors and Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    DEBTOR SEEKS TO SELL CERTAIN MACHINERY AND EQUIPMENT FREE AND
       CLEAR OF THE LIENS SECURED BY SUCH ASSETS . . . . . . . . . . . . . . . . . . . . . . 6
       A.   Debtor Seeks Authority to Sell Specific Assets . . . . . . . . . . . . . . . 6
       B.   Offer Tendered by Jios Sales, Inc. and Summary of its Terms . . . . . . . . . . 6
       C.   Court Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       D.   Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
       E.   Anticipated Tax Consequences of the Sale . . . . . . . . . . . . . . . . . . . 7
       F.   Sale is in the Best Interests of the Bankruptcy Estate and Debtor's Creditors 7
       G.   Proposed Procedures for Receiving and Making Over Bids for the Purchase of
            the Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   11 U.S.C. § 363(b)(1) ALLOWS THE DEBTOR-IN-POSSESSION TO SELL PROPERTY
       OF THE ESTATE IN THE ORDINARY COURSE OF BUSINESS WITH THE COURT'S
       APPROVAL AFTER NOTICE AND A HEARING; § 363(f) ALLOWS THE DEBTOR-IN-
       POSSESSION TO SELL ESTATE PROPERTY FREE AND CLEAR OF ANY INTEREST
       IN SUCH PROPERTY PROVIDED THE INTEREST HOLDER CONSENTS OR OTHER
       CONDITIONS APPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
       A.   Any Secured Claimant or Other Person Claiming an Interest in the Assets
            That Does Not Timely Oppose a Proposed Sale of the Assets Is Deemed to
            Have Consented to the Sale Pursuant to Section 363(f)(2) . . . . . . . . . . . . 12
       B.   Deference to Debtor's Business Judgment . . . . . . . . . . . . . . . . . . . . 13
       C.   Fairness of Sale Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       D.   Adequacy of Notice of the Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    DISTRIBUTION OF PROCEEDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

DECLARATION OF KENNETH BLACK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1

**Table of Authorities**

**Cases**                                                                                                     **Page No.**

2

3   *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653 (9th Cir. B.A.P. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

4   *Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343 (E.D. Pa. 1988). . . . . . .   10

5   *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063
(2d Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

6

7   *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855 (Bankr. D. N.J. 1994). . . . . .   12

8   *In re Borders Grp., Inc.*, 453 B.R. 459 (Bankr. S.D. N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . .   13

*In re Buffalo Coal Co.*, 2006 WL 3359585 (Bankr. N.D. W. Va. Nov. 15, 2006). . . . . . . . . . . . .   13

9

10   *In re Busick*, 831 F.2d 745 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

11   *In re Consol. Auto Recyclers, Inc.*, 123 B.R. 130 (Bankr. D. Me. 1991). . . . . . . . . . . . . . . . . . . .   13

*In re Dewey Ranch Hockey, LLC*, 414 B.R. 577 (Bankr. D. Ariz. 2009). . . . . . . . . . . . . . . . . . . .   11

12

13   *In re Ernst Home Ctr., Inc.*, 209 B.R. 974 (Bankr. W.D. Wa 1997). . . . . . . . . . . . . . . . . . . . . . . .   9

14   *In re Global Crossing Ltd.*, 295 B.R. 726 (Bankr. S.D. N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . .   13

15   *In re James*, 203 B.R. 449 (Bankr. W.D. Mo. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

16   *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*In re R Star Rests., Inc.*, 2010 WL 3329814 (Bankr. C.D. Cal. June 29, 2010). . . . . . . . . . . . . . .   12

17

18   *In re Terrace Gardens Park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989) . . . . . . . . . . . . . . . . .   10

19   *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991). . . . . . . . . . . . . . . . . .   9

20   *Missouri v. U.S. Bankr. Court*, 647 F.2d 768 (8th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Moldo v. Clark (In re Clark)*, 266 B.R. 163 ( B.A.P. 9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . .   12

21

22   *Romley v. Sun Nat'l Bank (In re Two S Corp.)*, 875 F.2d 240 (9th Cir. 1989). . . . . . . . . . . . . . . . .   14

23   *The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward
Holding Corp.)*, 242 B.R. 147 (D. Del. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

24   *The Official Comm. Of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re
Chateaugay Corp.)*, 973 F.2d 141 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

25

26   *U.S. v. Goodstein*, 883 F.2d 1362 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

27   *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (9th Cir. B.A.P. 1988) . . . . . . . . . . . . . . . . . .   9

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

F:\II A\clients\ACTIVE\KBRE - 1241\Bankruptcy\Pleadings\Sale Motion\Drafts\MTN TO SELL EQUIPMENT 8 2 18.wpd                                    THIS DOCUMENT PREPARED ON RECYCLED PAPER

**Rules and Statutes**

11 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. § 1107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

11 U.S.C. § 1108. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 303. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11 U.S.C. § 363. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7, 9-13, 15

11 U.S.C. § 365. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Local Bankruptcy Rule 6004-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Other Authorities**

Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* (16th ed. 2012). . . . . . . . . . . . 11, 13

*Black's Law Dictionary* (5th ed. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**MOTION**

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE;
THE OFFICE OF THE UNITED STATES TRUSTEE; KENNETH BLACK; AND ALL
PARTIES IN INTEREST AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE, that on September 5, 2018 at 10:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled courtroom located at 255 E. Temple Street, Los Angeles, CA, Keith Black Racing Engines, Inc., Debtor and Debtor-in-Possession herein ("Debtor"), will move this Court for an order authorizing the sale of the estate's interests in specific machinery and equipment (the "Assets"), free and clear of all claims and liens pursuant to 11 U.S.C. § 363(f) (the "Motion" and/or "Motion to Sell").

This Motion is based upon the following Memorandum of Points and Authorities, the Declaration of Kenneth Black, the separately filed Request for Judicial Notice, the documents and pleadings on file in this case, and such other and further matters as may be presented prior to or at the hearing on the Motion.

By this Motion, Debtor requests the following relief: Authorizing Debtor to sell and to transfer, free and clear of all claims, liens, and interests pursuant to section 363(f) of Title 11 of the United States Code (the "Bankruptcy Code"), the bankruptcy estate's interests in the Assets to Jios Sales, Inc., or the bidder with the highest or otherwise best bid for the Assets in the auction to be conducted by Debtor at the hearing on the Motion.

Debtor believes that the Court's approval of this Motion to Sell is in the best interests of Debtor's creditors. The offer to purchase the Assets made by Jios Sales, Inc. represents the highest or otherwise best offer received by Debtor. Debtor has determined that the best means for Debtor to obtain the most favorable recovery from the sale of the Assets is for Debtor to conduct an auction of the Assets, subject to open bidding with such auction scheduled to be conducted on August 15, 2018 at 10:00 a.m., at the hearing on the Motion to Sell.

///

///

///

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    **WHEREFORE**, Debtor respectfully requests the Court enter an order granting to Debtor the

2  following relief:

3        1.    Authorizing Debtor to sell and to assign, free and clear of all claims, liens, and interests

4  pursuant to section 363(f) of the Bankruptcy Code the bankruptcy estate's interests in the Assets to Jios

5  Sales, Inc., or the bidder with the highest or otherwise best bid for the Assets in the auction to be

6  conducted by Debtor at the hearing on the Motion;

7        2.    Authorizing the distribution of proceeds; and

8        3.    Granting to Debtor such other and further relief as this Court deems just and appropriate

9  under the facts and circumstances of this case.

10                                               Respectfully submitted,

11                                               HABERBUSH & ASSOCIATES, LLP

12

13   Dated: 8/7/18

14                                               By: _____
                                                  VANESSA M. HABERBUSH, ESQ., Attorneys
15                                                for Debtor and Debtor-in-Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**

On June 18, 2018, Debtor filed a voluntary petition for relief under the Bankruptcy Code (the "Petition Date'). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retained possession of its assets and is authorized to continue the operation and management of its business. Declaration of Kenneth Black at ¶ 3.

**A.    Events Preceding the Bankruptcy Filing**

Debtor is an automotive manufacturing company located in South Gate, California that manufactures engine blocks, racing parts, and other equipment used in drag racing and tractor pulling. Kenneth Black is the owner, President, Secretary, Chief Executive Officer, and Chief Financial Officer of Debtor.    Declaration of Kenneth Black at ¶ 4.

By way of background, Debtor has filed this bankruptcy proceeding for the primary purpose of permitting Debtor to reorganize and bring the Lawsuit (defined hereinbelow) to an expeditious and cost-effective end for the benefit of Debtor's creditors. Declaration of Kenneth Black at ¶ 5.

Prior to Debtor's bankruptcy filing, Debtor had been experiencing financial difficulties for some time.  Therefore, in or about 2016, Debtor began seeking investors to support its business operations. As a result, Debtor was introduced to Darren Beale with Fast Machines, Inc. ("FMI").  In or about October 2016, Mr. Beale represented to Debtor that he was interested in investing in the continued operations and development of the Debtor's brand and business.  Declaration of Kenneth Black at ¶ 6.

On or about December 2, 2016, KBRE, Kenneth Black, the Black Family Trust (the "Trust"), and FMI (through Mr. Beale) entered into a "Binding Heads of Agreement" Dated December 2, 2016 (the "BHA"). The BHA is an agreement that sets out certain terms of the deal between the KBRE, Mr. Black, the Trust, and FMI, whereby the parties would continue building the Keith Black business through the formation of a new company ("NewCo").  KBRE, Mr. Black, and the Trust are hereinafter referred to as the "KB Parties."  Upon completion of the obligations under the BHA, NewCo would perform all activities associated with the KBRE business, KBRE would cease to carry out activities associated with its business, and certain assets and liabilities would be transferred to NewCo.  In the course of negotiations, it was decided that NewCo would have the name Keith Black, Inc. ("KBI").

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    Declaration of Kenneth Black at ¶ 7.

2    During negotiations to complete the agreements contemplated by the BHA, fulfill the obligations

3    under the BHA, and effectuate the transfer of assets and liabilities, FMI and several investors became

4    privy to KBRE's confidential and competitive information, business practices, and trade secrets.

5    Further, because FMI refused to perform the terms of the BHA and insisted on new terms that harmed

6    KBRE, the parties could not agree on the terms of acquisition and/or all of the agreements to complete

7    the acquisition.  Consequently, discussions fell a part.  Declaration of Kenneth Black at ¶ 8.

8    Due to the number of obligations under the BHA that FMI had failed to perform, on or about

9    January 25, 2018, KBRE, through its attorney, notified Mr. Beale that FMI had committed a number

10    of breaches of the BHA and that unless the breaches were cured within 7 days, KBRE was terminating

11    the BHA.  Instead of addressing and remedying the breaches of the BHA, Mr. Beale on behalf of

12    himself, FMI, and other potential investors of KBI (including Tim Banning, Victor Bray, For Hemi's

13    Only, Inc., and Bray Racing Enterprises, Inc.) informed KBRE that they disagreed.  FMI and KBI took

14    no other action in relation to the BHA until filing the Lawsuit. Declaration of Kenneth Black at ¶ 9.

15    Although FMI was on notice of KBRE's termination of the BHA because the parties did not

16    complete their respective obligations under the BHA, Mr. Beale took unauthorized actions on behalf

17    of KBI. This included sending a notice to Mr. Black that he, *inter alia*, was "removed" from the Board

18    of Directors of KBI and permitting a statement of information to be filed with the Secretary of State for

19    the State of California on behalf of KBI. Declaration of Kenneth Black at ¶ 10.

20    Finally, since KBRE informed FMI that it was terminating the BHA and not completing the

21    acquisition, FMI took actions designed to hurt KBRE and the Keith Black name and then initiated a

22    lawsuit. Specifically, on May 11, 2018, Fast Machine, Inc. and Keith Black, Inc. filed a complaint in

23    the Superior Court of California, County of Los Angeles , commencing Keith Black, Inc. v. Kenneth

24    Black, Case No. VC067127 (the "Lawsuit").  Debtor, Mr. Black, the Trust and Alumalloy, Inc. ("ACC")

25    are all defendants in the Lawsuit.  The Lawsuit was pending on the Petition Date.  Declaration of

26    Kenneth Black at ¶ 11.

27    ///

28    ///

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

### B.     Debtor's Business

As stated above, the Chapter 11 Case was initiated to permit the Debtor to reorganize and bring the Lawsuit to an expeditious and cost-effective end for the benefit of KBRE's creditors.

On the Petition Date, Debtor was renting real property for the premises used for its principal place of business, located at 11120 Scott Avenue, South Gate, CA 90280 (the "Real Property"). The lease for the Real Property is between Debtor and the Trust. There is no written agreement and it is on a month-to-month basis. In or about June, 2018, the Real Property was sold. Therefore, Debtor was required to move from the Real Property and re-locate its business. Declaration of Kenneth Black at ¶ 12.

### C.     Debtor's Creditors and Assets

Debtor has one secured creditor, Kenneth Black. As discussed below, Mr. Black has a first priority lien on all of Debtor's personal property and general intangibles, including Debtor's accounts receivable and bank deposits. Declaration of Kenneth Black at ¶ 13.

Additionally, disputes may exist under the BHA concerning ownership of personal property in the Debtor's possession including, without limitation, the Assets. Specifically, KBI and/or FMI may claim ownership interests in and to the Assets. Such possible claims to ownership in the Assets may arise pursuant to the BHA which has been terminated by Debtor and which, if not terminated, is an executory contract pursuant to 11 U.S.C. § 365 which the Debtor intends to reject. In short, Debtor disputes any ownership claims to the Assets made by KBI and/or FMI. Declaration of Kenneth Black at ¶ 14.

As of June 30, 2018, Debtor had approximately $778.74 in unrestricted cash in its bank account. In addition, Debtor has tools, machinery, and equipment of an unknown market value.[1] Declaration of Kenneth Black at ¶ 15.

///

///

---

[1]     The market value of these assets have not been obtained and Debtor has no reliable method to determine their value.

**II.    DEBTOR SEEKS TO SELL CERTAIN MACHINERY AND EQUIPMENT FREE AND CLEAR OF THE LIENS SECURED BY SUCH ASSETS**

**A.    <u>Debtor Seeks Authority to Sell Specific Assets</u>**

By this Motion, Debtor seeks approval of the sale of specific items of its machinery and equipment (the "Assets"). A complete list of the Assets subject to this Sale Motion are attached to the Declaration of Kenneth Black as Exhibit "1." The sale of the Assets is "as is," "where is," and "with all faults," with no guarantees or warranties regarding the Assets except that the sale shall be free and clear of all claims, liens, and interests against the Assets. Declaration of Kenneth Black at ¶ 16.

**B.    <u>Offer Tendered by Jios Sales, Inc. and Summary of its Terms</u>**

On or about July 9, 2018, an offer was tendered by Jios Sales, Inc. to Debtor offering $20,500 for the purchase of the Assets (the "Offer"). The material points in the Offer are:

(i)      Jios Sales, Inc. will pay Debtor $20,500 for the Assets;

(ii)     Jios Sales, Inc. is responsible for the costs related to pick up and transfer of the Assets;

(iii)    Jios Sales, Inc. will tender the payment to Debtor in the form of a cashier's check, no later than 10 days after the Bankruptcy Court approves the sale; and,

(iv)     If the Assets are sold to an overbidder, Jios Sales, Inc. will be entitled to any costs it has incurred as a result of moving the Assets from Debtor's facility in the amount of $1,500. Declaration of Kenneth Black at ¶ 17.

Jios Sales, Inc. does not have any previous connections with Debtor and is not affiliated with Debtor or its principals. Further, Jios Sales, Inc. understands that its Offer is subject to overbid and United States Bankruptcy Court approval as discussed below. Declaration of Kenneth Black at ¶ 18.

**C.    <u>Court Approval</u>**

The sale of the Assets is wholly contingent upon entry of a final, non-appealable order by this Court approving the sale of the Assets, authorizing the transactions contemplated by the Offer, directing payment of the purchase price, and providing that the Assets will be conveyed by Debtor to Jios Sales, Inc. or the successful bidder free and clear of all claims, liens, interests, and encumbrances or interests of any kind, with such claims, liens, interests, and encumbrances to attach to the proceeds of the sale to the same extent, validity, and priority, as they now attach to the Assets.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**D.    Secured Claims**

Debtor seeks authority to sell the Assets, with appropriate findings by the Court, to Jios Sales, Inc. or the successful bidder free and clear of all liens (as defined in 11 U.S.C. § 101(37)), claims (as defined in 11 U.S.C. § 101(5)), and interests (collectively, "Liens"), pursuant to 11 U.S.C. § 363(f). The Sale shall be free and clear of the Liens and the Liens shall attach to the proceeds of the sale to the same priority, extent, and validity as they now attach to the Assets pursuant to 11 U.S.C. § 363(f).  The following Liens encumber and the following claims are made against the Assets:

1.    <u>Kenneth Black</u>. A U.C.C.-1 financing statement recorded on or about June 7, 2018 by Kenneth Black. A true and correct copy of the June 7, 2018 filing is attached to the Declaration of Kenneth Black as Exhibit "2." Pursuant to the U.C.C.-1 filing, Mr. Black has a lien on all of Debtor's personal property including the Assets. As indicated in Debtor's schedule D, the amount due to Mr. Black is $75,000.   Declaration of Kenneth Black at ¶ 19.

2.    <u>Keith Black, Inc. and/or Fast Machine, Inc.</u>  KBI and/or FMI, may claim ownership interests in and to the Assets. Debtor disputes any ownership claims to the Assets made by KBI and/or FMI. Declaration of Kenneth Black at ¶ 20.

**E.    Anticipated Tax Consequences of the Sale**

Debtor anticipates no major tax consequences of the proposed sale of the Assets.

**F.    Sale is in the Best Interests of the Bankruptcy Estate and Debtor's Creditors**

Although Debtor has received a few other queries for the Assets, no prospective buyer has shown serious interest in purchasing the Assets. Jios Sales, Inc. is in the business of purchasing and selling machinery similar to the Assets and has knowledge of their value. Further, Jios Sales, Inc. will issue a cashier's check for the purchase price of the Assets and is willing to move the Assets from Debtor's premises at no cost to the Debtor. Debtor also believes that, due to the age and condition of the Assets, most of the Assets are only valuable as scrap material. Therefore, Debtor believes that any offer that will offer Debtor funds for the Assets is reasonable. This shows Jios Sales, Inc. is able to purchase the Assets and given the circumstances of Debtor's immediate need to re-locate, keeps the Debtor's expenses related to storing and/or moving the Assets to a minimum. Additionally, Debtor no longer uses the Assets in the operation of its business and does not anticipate using the Assets for its operations in

1  the future. Because the Assets are not necessary for Debtor's continued operations and the sale of the

2  Assets will generate funds from which Debtor can continue to grow its business for the benefit its

3  creditors, the sale of the Assets is in the best interests of the estate and Debtor's creditors.  Declaration

4  of Kenneth Black at ¶ 21.

5       **G.**     **Proposed Procedures for Receiving and Making Over Bids for the Purchase of the**

6                **Assets**

7       Debtor proposes that all of the Assets be offered in bulk as opposed to in a piecemeal manner.

8  As stated above, most of the Assets are only valuable as scrap material.  Therefore, a sale of the Assets

9  in bulk will likely yield a higher profit for Debtor.

10       Debtor further proposes that after all potential over bidders have been identified and proven their

11  ability, to the Court's satisfaction, to perform any offer they may choose to make, overbidding be invited

12  with an opening offer of at least $3,000 higher than the Offer.[2] Because the Offer Debtor received is

13  $20,500, the opening overbid should be $23,500 and incremental bids should thereafter be in the amount

14  of no less than $500.

15       In order to qualify as a proposed bidder, the bidder must (1) be present at the hearing on the

16  Motion either personally or through a person authorized to act on its behalf; and (2) bring a cashier's

17  check in the amount of the first bid made out to Keith Black Racing Engines, Inc., Debtor-in-Possession.

18  If the bidder is the successful bidder, the bidder will deliver the cashier's check to Debtor as a non-

19  refundable deposit.  If the successful bidder does not pay the remainder of the bid price within 48 hours

20  after the conclusion of the hearing on the Motion, the deposit will be forfeit.

21       Finally, following the entry of an order approving the Motion, if the Bankruptcy Court approves

22  the Sale to a person who made a higher or better offer than Jios Sales, Inc., then the Debtor will pay Jios

23  Sales, Inc. $1,500 within 10 days of receiving the sale proceeds from the successful bidder.

24  ///

25  ///

26  ///

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

_____

[2]    The opening offer takes into account a breakup fee in the amount of $1,500.

THIS DOCUMENT PREPARED ON RECYCLED PAPER

**III.    11 U.S.C. § 363(b)(1) ALLOWS THE DEBTOR-IN-POSSESSION TO SELL PROPERTY OF THE ESTATE IN THE ORDINARY COURSE OF BUSINESS WITH THE COURT'S APPROVAL AFTER NOTICE AND A HEARING; § 363(f) ALLOWS THE DEBTOR-IN-POSSESSION TO SELL ESTATE PROPERTY FREE AND CLEAR OF ANY INTEREST IN SUCH PROPERTY PROVIDED THE INTEREST HOLDER CONSENTS OR OTHER CONDITIONS APPLY.**

Section 363(b)(1) of the Bankruptcy Code provides that the Trustee (or Debtor-in-Possession pursuant to 11 U.S.C. § 1107)[3] may, following "notice and a hearing" sell "other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1) "'The requirements of section 363(b) protect the creditor's interest in the assets of the estate.'" *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.*), 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (quoting *U.S. v. Goodstein*, 883 F.2d 1362, 1367 (7th Cir. 1989), *cert. denied*, 494 U.S. 1007, 110 S. Ct. 1305, 108 L. Ed.2d 481 (1990) (citation omitted)). As a result, this Court has "considerable discretion" in deciding whether to approve the sale of estate property by a debtor-in-possession provided the debtor-in-possession provides a "sound business justification." *Walter v. Sunwest Bank (In re Walter*), 83 B.R. 14, 17 (9th Cir. B.A.P. 1988) (citations omitted); *accord In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wa 1997).

In addition, the proposed sale must be in "good faith." *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) (citations omitted). "'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." *Id.* at 842 (citation omitted).

Further, 11 U.S.C. § 363(f) allows the Debtor-in-Possession to sell estate property pursuant to § 363(b)(1) "free and clear of any interest in such property of an entity other than the estate," provided that one of five conditions applies:

a.    applicable nonbankruptcy law allows a free and clear sale of the intended type of

---

[3]    11 U.S.C. § 1107 states that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee...."

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    interest;

2    b.    the entity with an interest in the property consents to the sale;

3    c.    the interest is a lien and the price at which the property to be sold "is greater than the

4        aggregate value of all liens on such property";

5    d.    the interest is in "bona fide dispute"; or,

6    e.    the entity with an interest in the property could be compelled to accept a monetary

7        payment in a legal or equitable proceeding in lieu of its interest.

8    11 U.S.C. § 363(f)(1)-(5).

9        Because subsections (1) through (5) of Section 363(f) are "written in the disjunctive," authority

10    to sell property free and clear of an interest therein should be granted if any of the five conditions of

11    Section 363(f) are met with respect to each interest. *Citicorp Homeowners Services, Inc. v. Elliot (In*

12    *re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

13        Finally, section 363(e) provides, in relevant part:

14        Notwithstanding any other provision of this section, at any time, on request of an entity
        that has an interest in property used, sold, or leased, or proposed to be used, sold, or
15        leased, by the trustee, the court, with or without a hearing, shall prohibit or condition
        such use, sale, or lease as is necessary to provide adequate protection of such interest.
16        . . .

17    11 U.S.C § 363(e).

18        Here, it is clear that the sale of the Assets free and clear is in the best interests of the estate, the

19    lone secured creditor, and the estate's unsecured creditors.  11 U.S.C. § 363(f)(2) provides that the

20    Assets may be sold free and clear of any interests in the Assets if "the entity with an interest in the

21    property consents to the sale."  As demonstrated by the Declaration of Kenneth Black, Mr. Black

22    consents to the sale of the Assets.  Therefore, the requirement of section 363(f) is met. Declaration of

23    Kenneth Black at ¶ 19.

24        Moreover, the proposed sale provides significant adequate protection to Mr. Black.  Adequate

25    protection is one of the touchstones of "whether a debtor's proposed action should be approved.

26    Adequate protection in turn focuses on the value of the collateral securing the claim. So long as a

27    creditor's interest is adequately protected, the debtor is permitted to sell property of the estate." *In re*

28    *Terrace Gardens Park P'ship*, 96 B.R. 707, 713 (Bankr. W.D. Tex. 1989) (citing 11 U.S.C. § 363(e)).

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    While Mr. Black will not receive any funds obtained from the sale of the Assets, Mr. Black has

2    consented to the sale and the remainder of Debtor's personal property, on which Mr. Black as a lien,

3    protects his interest.  Because Mr. Black has a first priority lien on the remainder of Debtor's personal

4    property and will retain a lien on the proceeds of the Sale, Mr. Black's interest is adequately protected.

5    Further, even if Mr. Black's interest was not adequately protected, as indicated in the Declaration of

6    Kenneth Black, Mr. Black consents to the sale of the Assets. *See* Declaration of Kenneth Black at ¶ 19.

7         Finally, to the extent that Keith Black, Inc. and/or FMI claim an interest in the Assets, their

8    interests are subject to a bona fide dispute.  Therefore, the Assets may be sold pursuant to 11 U.S.C. §

9    363(f)(4). Section 363(f)(4) provides that property may be sold free and clear of an interest if "such

10   interest is in bona fide dispute." 11 U.S.C. § 363(f)(4).  In *In re Octagon Roofing*, the court discussed

11   the "bona fide dispute" provision as follows:

12        The term "bona fide dispute" is not defined in § 363(f)(4) of the Code.  However, term
          "bona fide dispute" is also used in the Bankruptcy Code at 11 U.S.C. § 303 in connection
13        with the nature of claims asserted as basis for an involuntary Chapter 7 petition.  To
          determine in this Circuit what constitutes a bona fide dispute, "the bankruptcy court must
14        determine whether there is an objective basis for either a factual or a legal dispute as to
          the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987).  Under this
15        standard, a court need not determine the probable outcome of the dispute, but merely
          whether one exists. *Id.*
16

17   *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991) (citing 11 U.S.C. § 303; *In re Busick*,

18   831 F.2d 745, 750 (7th Cir. 1987)); *see also* Alan N. Resnick & Henry J. Sommer, *Collier on*

19   *Bankruptcy*, § 363.06[5] (16th ed. 2012) ("The court is not required to resolve the underlying dispute

20   as a condition to authorizing the sale under this provision, but must determine that it exists.").

21        The purpose of Section 363(f)(4) is to permit property of the estate to be sold free and
          clear of interests that are disputed by the representatives of the estate so that liquidation
22        of the estate's assets need not be delayed while such disputes are being litigated.
          Typically, the proceeds of sale are held subject to the disputed interest and then
23        distributed as dictated by the resolution of the dispute; such procedure preserves all
          parties' rights by simply transferring interests from property to dollars that represent its
24        value.
          Such view is based upon Section 363(e) of the Code which requires the court
25        when selling property under Section 363 "to provide adequate protection" of any interest
          in the property being sold free and clear of that interest.  Further that sub-section
26        expressly states, in mandatory language, that the court "shall prohibit or condition" the
          proposed sale "as is necessary to provide adequate protection of such interest".
27

28

1    *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 591 (Bankr. D. Ariz. 2009) (citations omitted)

2    (citing 11 U.S.C. § 363; *Moldo v. Clark (In re Clark)*, 266 B.R. 163 ( B.A.P. 9th Cir. 2001); *see also*

3    *Missouri v. U.S. Bankr. Court*, 647 F.2d 768, 778 (8th Cir. 1981).

4      Based thereon, if KBI and/or FMI claim any interest in the Assets, Debtor requests, pursuant

5    to Section 363(f)(4) of the Bankruptcy Code, that the Court grant Debtor authority to sell the Assets

6    free and clear of all claims, liens, and interests if such claims, liens, or interests are subject to a bona

7    fide dispute.  As discussed above, Debtor disputes any ownership claims to the Assets made by KBI,

8    and/or FMI. Declaration of Kenneth Black at ¶ 14.  Therefore, there is a bona fide dispute relating to

9    the validity of any interest claimed in the Assets by KBI and/or FMI.  Therefore, the Court has

10    authority to authorize the sale of the Assets free and clear of these claims and should so authorize

11    the sale.

12      All other claims related to the Assets, to the extent any exist, will be paid upon close of the

13    sale such that the sale is free and clear of their liens because they will be paid in full.

14      Because the sale of the Assets free and clear is in the best interests of the estate and Debtor

15    has satisfied the requirement of section 363(f), the Court should grant the Motion and approve the

16    Sale of the Assets to the successful bidder.

17    **A.** **Any Secured Claimant or Other Person Claiming an Interest in the Assets That**

18      **Does Not Timely Oppose a Proposed Sale of the Assets Is Deemed to Have**

19      **Consented to the Sale Pursuant to Section 363(f)(2)**

20      As set forth hereinabove, section 363(f)(2) of the Bankruptcy Code authorizes a sale of estate

21    property free and clear of an interest therein asserted by an entity if such entity consents to the sale.

22    A failure of a secured claimant to timely object to a proposed sale, after receiving proper notice of

23    the sale, is held to be satisfactory consent for the purposes of Section 363(f)(2).  *See, e.g., In re R*

24    *Star Rests., Inc.*, 2010 WL 3329814, at *4 (Bankr. C.D. Cal. June 29, 2010); *In re James*, 203 B.R.

25    449, 453 (Bankr. W.D. Mo. 1997); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R.

26    855, 858 (Bankr. D. N.J. 1994) (citations omitted).

27      Consequently, the failure of any secured claimant, if any other than Mr. Black, or any other

28    person claiming an interest in the Assets, to object to the proposed Sale of the Assets, after receiving

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  proper notice of this Motion to Sell, should be deemed to constitute its consent to the Sale for the

2  purposes of Section 363(f)(2). Therefore, if no objection is filed, this Court should deem the failure

3  to object as consent pursuant to Section 363(f)(2).

4  **B.**    **Deference to Debtor's Business Judgment**

5      A debtor may sell, outside of the ordinary course of the debtor's business, property of the

6  debtor's estate if the sale transaction is within the reasonable business judgment of the debtor. *E.g.,*

7  *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D. N.Y. 2011) (citing *The Official Comm. Of*

8  *Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 973

9  F.2d 141, 144–45 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*),

10  722 F.2d 1063, 1072 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.

11  N.Y. 2003)); *In re Buffalo Coal Co.*, 2006 WL 3359585, at *3 (Bankr. N.D. W. Va. Nov. 15, 2006).

12  Bankruptcy courts generally do not interfere with a debtor's exercise of its business judgment. *See,*

13  *e.g., In re Consol. Auto Recyclers, Inc.*, 123 B.R. 130, 140 (Bankr. D. Me. 1991) (citations omitted);

14  *The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward*

15  *Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) (citing *Collier on Bankruptcy* § 363.02 (15th

16  ed.1997)).

17      Here, as demonstrated by the Declaration of Kenneth Black, Debtor has marketed the Assets

18  for sale and obtained an Offer which it believes to be a fair price for the Assets.   Declaration of

19  Kenneth Black at ¶ 19. This Court can have confidence in the reasonableness of the business

20  judgment of Debtor in selecting Jios Sales, Inc. for the Sale of the Assets and should defer to this

21  business judgment because Debtor marketed the Assets.  Additionally, the auction will allow for any

22  higher or better offer for the purchase of the Assets to be obtained at the hearing on the Motion to

23  Sell. This auction is open to the public and will ensure that Debtor obtains the highest and best

24  possible price for the Assets. Further, because Debtor no longer uses the Assets in the operation of

25  its business and does not anticipate using the Assets for its operations in the future, selling the

26  Assets is within Debtor's reasonable business judgment.  Finally, the sale of the Assets will allow

27  Debtor to increase its cash flow so it can continue its business operations for the benefit of the estate

28  and its creditors.  Therefore, this Court should authorize the Sale of the Assets.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

### C.    Fairness of Sale Price

Any successful bid for the Personal Property, including the offer of the Buyer, should be deemed a fair sale price for the Personal Property. The Ninth Circuit Court of Appeals has held "that the price paid at a commercially reasonable sale is the best evidence of [an asset's] value." *Romley v. Sun Nat'l Bank (In re Two S Corp.)*, 875 F.2d 240, 243 (9th Cir. 1989). The fair market price of an asset is the amount at which property would be sold as between a willing buyer and willing seller. *Id.* at 244 & n.4 (quoting *Black's Law Dictionary* 536 (5th ed. 1979) ("By definition, when there has been a fair sale the purchase price reflects the fair market value of the asset.").

Here, the amount of the Offer of Jios Sales, Inc. and the fact that the Offer is subject to higher and better offers at a public auction show that the sale price for the Assets is fair. This sale process provides the best assurance possible under the circumstances of this case that Debtor is obtaining a far price for the Sale of the Assets. Accordingly, this Court should determine that the sale price for the Assets represents fair recovery for Debtor's estate from the Sale of the Assets, and thus a reasonable exercise of Debtor's business judgment.

### D.    Adequacy of Notice of the Sale

Debtor seeks an order, with appropriate findings of the Court, approving the adequacy of notice given to creditors and parties-in-interest of the hearing on the Motion. The Notice of the Motion to Sell was served on the following persons, as demonstrated by the proof of service for the Notice: (1) all creditors of the bankruptcy estate; (2) all parties-in-interest in this case; (3) all entities who have requested special notice in this case; and (4) any other parties that Debtor believes may have an interest in purchasing the Assets. Additionally, the Notice of the Motion to Sell includes all information required by Local Bankruptcy Rule 6004-1(c)(3). Therefore, the Court should approve the adequacy of the Notice of the Motion to Sell.

## IV.    DISTRIBUTION OF PROCEEDS.

The proceeds of the sale shall be distributed as follows:

a.    <u>Costs of Sale</u>. There are no costs of sale, commissions, or other fees associated with the sale contemplated by the Motion.

b.    <u>Remaining Proceeds to Debtor.</u> Because FMI and/or KBI may claim interests

1   in the Assets, the proceeds from the sale of the Assets shall be deposited into a separately-

2   established, segregated, and interest-bearing bank account until the disputes regarding their claims

3   of interests in the Assets are resolved by Court order. If the claims of interests to the Assets made by

4   FMI and/or KBI are resolved in Debtor's favor, the proceeds shall be distributed to Debtor because

5   Mr. Black has consented to such distribution. If, however, the claims of interests to the Assets made

6   by FMI and/or KBI are not resolved in Debtor's favor, the proceeds shall be distributed as directed

7   by order of the Court.

8   **V.    CONCLUSION**

9          For the reasons discussed herein and for good cause appearing, Debtor respectfully requests

10  that this Court grant the Motion and (1) authorize the sale of the Assets, free and clear of all claims,

11  liens and interests pursuant to section 363(f) of the Bankruptcy Code; (2) authorize the distribution

12  of proceeds; and (3) grant to Debtor such other and further relief as this Court deems just and

13  appropriate under the facts and circumstances of this case.

14                                          Respectfully submitted,

15                                          HABERBUSH & ASSOCIATES, LLP

16

17  Dated: 8/7/18

18                                          By: _____
                                            VANESSA M. HABERBUSH, ESQ., Attorneys
19                                          for Debtor and Debtor-in-Possession

20

21

22

23

24

25

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## DECLARATION OF KENNETH BLACK

I, Kenneth Black hereby declare and state:

1.     I am an individual over the age of 18 years and have personal knowledge of the facts stated herein. If I were called as a witness I would and could competently testify to the following facts, under penalty of perjury.

2.     I am the owner and owner and President of Keith Black Racing Engines, Inc. ("Debtor" and/or "KBRE"). I am actively involved in all of Debtor's operations. I personally participate in and have personal knowledge of all of Debtor's operations, finances, and activities. As President of the Debtor, I am one of the custodians of the books, records, and files of the Debtor. I have personally reviewed those books, records, and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of the Debtor on behalf of the Debtor, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of the Debtor's business at or near the time of the acts, conditions, or events to which they relate. Any such document was prepared in the ordinary course of business of the Debtor by a person who had personal knowledge of the event being recorded and had, or has, a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required. I kept books and records in relation to the Debtor's business and operations prior to the filing of the bankruptcy. This declaration is given in support of Debtor's Motion for order authorizing the sale of the estate's interests in specific machinery and equipment, free and clear of all claims and liens pursuant to 11 U.S.C. § 363 (the "Sale Motion" and/or "Motion").

3.     On June 18, 2018, Debtor filed a voluntary petition for relief under the Bankruptcy Code (the "Petition Date'). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retained possession of its assets and is authorized to continue the operation and management of its business.

4.     Debtor is an automotive manufacturing company located in South Gate, California that manufactures engine blocks, racing parts, and other equipment used in drag racing and tractor pulling. I am the owner, President, Secretary, Chief Executive Officer, and Chief Financial Officer of Debtor.

5.     By way of background, Debtor has filed this bankruptcy proceeding for the primary purpose of permitting Debtor to reorganize and bring the Lawsuit (defined hereinbelow) to an

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    expeditious and cost-effective end for the benefit of Debtor's creditors.

2         6.    Prior to Debtor's bankruptcy filing, Debtor had been experiencing financial difficulties

3    for some time. Therefore, in or about 2016, Debtor began seeking investors to support its business

4    operations. As a result, Debtor was introduced to Darren Beale with Fast Machines, Inc. ("FMI"). In

5    or about October 2016, Mr. Beale represented to Debtor that he was interested in investing in the

6    continued operations and development of the Debtor's brand and business.

7         7.    On or about December 2, 2016, KBRE, myself, the Black Family Trust (the "Trust"), and

8    FMI (through Mr. Beale) entered into a "Binding Heads of Agreement" Dated December 2, 2016 (the

9    "BHA"). The BHA is an agreement that sets out certain terms of the deal between KBRE, the Trust,

10   FMI, and I, whereby the parties would continue building the Keith Black business through the formation

11   of a new company ("NewCo"). KBRE, the Trust, and I, are hereinafter referred to as the "KB Parties."

12   Upon completion of the obligations under the BHA, NewCo would perform all activities associated with

13   the KBRE business, KBRE would cease to carry out activities associated with its business, and certain

14   assets and liabilities would be transferred to NewCo. In the course of negotiations, it was decided that

15   NewCo would have the name Keith Black, Inc. ("KBI").

16        8.    During negotiations to complete the agreements contemplated by the BHA, fulfill the

17   obligations under the BHA, and effectuate the transfer of assets and liabilities, FMI and several investors

18   became privy to KBRE's confidential and competitive information, business practices, and trade secrets.

19   Further, because FMI refused to perform the terms of the BHA and insisted on new terms that harmed

20   KBRE, the parties could not agree on the terms of acquisition and/or all of the agreements to complete

21   the acquisition. Consequently, discussions fell a part.

22        9.    Due to the number of obligations under the BHA that FMI had failed to perform, on or

23   about January 25, 2018, KBRE, through its attorney, notified Mr. Beale that FMI had committed a

24   number of breaches of the BHA and that unless the breaches were cured within 7 days, KBRE was

25   terminating the BHA. Instead of addressing and remedying the breaches of the BHA, Mr. Beale on

26   behalf of himself, FMI, and other potential investors of KBI (including Tim Banning, Victor Bray, For

27   Hemi's Only, Inc., and Bray Racing Enterprises, Inc.) informed KBRE that they disagreed. FMI and

28   KBI took no other action in relation to the BHA until filing the Lawsuit.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

10.  Although FMI was on notice of KBRE's termination of the BHA because the parties did not complete their respective obligations under the BHA, Mr. Beale took unauthorized actions on behalf of KBI. This included sending a notice to me that I, *inter alia*, was "removed" from the Board of Directors of KBI and permitting a statement of information to be filed with the Secretary of State for the State of California on behalf of KBI.

11.  Finally, since KBRE informed FMI that it was terminating the BHA and not completing the acquisition, FMI took actions designed to hurt KBRE and the Keith Black name and then initiated a lawsuit. Specifically, on May 11, 2018, Fast Machine, Inc. and Keith Black, Inc. filed a complaint in the Superior Court of California, County of Los Angeles, commencing *Keith Black, Inc. v. Kenneth Black*, Case No. VC067127 (the "Lawsuit"). Debtor, Mr. Black, the Trust and Alumalloy, Inc. ("ACC") are all defendants in the Lawsuit. The Lawsuit was pending on the Petition Date.

12.  On the Petition Date, Debtor was renting real property for the premises used for its principal place of business, located at  11120 Scott Avenue, South Gate, CA 90280 (the "Real Property"). The lease for the Real Property is between Debtor and the Trust. There is no written agreement and it is on a month-to-month basis. In or about June, 2018, the Real Property was sold. Therefore, Debtor was required to move from the Real Property and re-locate its business.

13.  I am the Debtor's only secured creditor. I have a lien on all of Debtor's personal property and general intangibles, including Debtor's accounts receivable and bank deposits.

14.  Disputes may exist under the BHA concerning ownership of personal property in the Debtor's possession including, without limitation, the Assets. Specifically, KBI and/or FMI may claim ownership interests in and to the Assets. Such possible claims to ownership in the Assets may arise pursuant to the BHA which has been terminated by Debtor and which, if not terminated, Debtor intends to reject as allowed by bankruptcy law. In short, Debtor disputes any ownership claims to the Assets made by KBI and/or FMI.

15.  As of June 30, 2018, Debtor had approximately $778.74 in unrestricted cash in its bank account. In addition, Debtor has tools, machinery, and equipment of an unknown market value. The market value of these assets have not been obtained and I have no reliable method to determine their value.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

16.    By this Motion, Debtor seeks approval of the sale of specific items of its machinery and equipment (the "Assets"). A complete list of the Assets subject to this Sale Motion are attached hereto and incorporated herein, by this reference, as Exhibit "1." The sale of the Assets is "as is," "where is," and "with all faults," with no guarantees or warranties regarding the Assets except that the sale shall be free and clear of all claims, liens, and interests against the Assets.

17.    On or about July 9, 2018, an offer was tendered by Jios Sales, Inc. to Debtor offering $20,500 for the purchase of the Assets (the "Offer"). The material points in the Offer are:

(i)    Jios Sales, Inc. will pay Debtor $20,500 for the Assets;

(ii)    Jios Sales, Inc. is responsible for the costs related to pick up and transfer of the Assets;

(iii)    Jios Sales, Inc. will tender the payment to Debtor in the form of a cashier's check, no later than 10 days after the Bankruptcy Court approves the sale; and,

(iv)    If the Assets are sold to an overbidder, Jios Sales, Inc. will be entitled to any costs it has incurred as a result of moving the Assets from Debtor's facility in the amount of $1,500.

18.    Jios Sales, Inc. does not have any previous connections with Debtor and is not affiliated with Debtor or its principals. Further, I have informed Jios Sales, Inc. that its Offer is subject to overbid and United States Bankruptcy Court approval as discussed below.

19.    A U.C.C.-1 financing statement recorded June 7, 2018 by me. A true and correct copy of the June 7, 2018 filing is attached hereto and incorporated herein, by this reference, as Exhibit "2." Pursuant to the U.C.C.-1 filing, I have a lien on all of Debtor's personal property including the Assets. As indicated in Debtor's schedule D, the amount due to me is $75,000. As Debtor's secured creditors, I do not object to the sale of the Assets. I also do not request adequate protection. I further consent to all of the proceeds from the sale of the Assets to be distributed to Debtor.

20.    KBI and/or FMI, may claim ownership interests in and to the Assets. Debtor disputes any ownership claims to the Assets made by KBI and/or FMI. Because FMI and/or KBI, may claim interests in the Assets, the proceeds from the sale of the Assets shall be deposited into a separately-established, segregated, and interest-bearing bank account until the disputes regarding their claims of interests in the Assets are resolved by court order. If the claims of interests to the Assets made by FMI and/or KBI are resolved in Debtor's favor, the proceeds shall be distributed to Debtor because I have consented to such

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1   distribution. If, however, the claims of interests to the Assets made by FMI and/or KBI are not resolved

2   in Debtor's favor, the proceeds shall be distributed as directed by order of the Court.

3       21.    Prior to the Bankruptcy filing, I, on behalf of Debtor spoke to investors who expressed

4   interest in purchasing some or all of the Assets. Since the bankruptcy filing, I have also contacted

5   investors. Although, I, on behalf of Debtor, have received a few other queries for the Assets, no

6   prospective buyer has shown serious interest in purchasing the Assets. Jios Sales, Inc. is in the business

7   of purchasing and selling machinery similar to the Assets and has knowledge of their value. Jios Sales,

8   Inc. will issue a cashier's check for the purchase price of the Assets and is willing to move the Assets

9   from Debtor's premises at no cost to the Debtor if it purchases the Assets. I, on behalf of Debtor, also

10   believe that, due to the age and condition of the Assets, most of the Assets are only valuable as scrap

11   material. Therefore, I, on behalf of Debtor, believe that any offer that will offer Debtor funds for the

12   Assets is reasonable. Jios Sales, Inc. is able to purchase the Assets and given the circumstances of

13   Debtor's immediate need to re-locate, keeps the Debtor's expenses related to storing and/or moving the

14   Assets to a minimum. Additionally, Debtor no longer uses the Assets in the operation of its business and

15   does not anticipate using the Assets for its operations in the future. Because the Assets are not necessary

16   for Debtor's continued operations and the sale of the Assets will generate funds from which Debtor can

17   continue to grow its business for the benefit its creditors, I, on behalf of Debtor, believe the sale of the

18   Assets is in the best interests of the estate and Debtor's creditors. I, on behalf of Debtor, also believe

19   the Offer is a fair price for the Assets.

20       EXECUTED AT <u>South Gate</u>, CALIFORNIA, THIS **3rd** DAY OF <sup>AUGUST</sup>, 2018.

21   I declare under penalty of perjury that the foregoing is true and correct.

22

23

24                           Kenneth Black, Declarant

25

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

THIS DOCUMENT PREPARED ON RECYCLED PAPER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

444 West Ocean Boulevard, Suite 1400, Long Beach, CA 90802

A true and correct copy of the foregoing document entitled (*specify*):  **DEBTOR AND DEBTOR-IN-POSSESSION'S
MOTION FOR ORDER AUTHORIZING THE SALE OF THE ESTATE'S INTERESTS IN SPECIFIC MACHINERY AND
EQUIPMENT FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS PURSUANT TO   11 U.S.C. § 363;
DECLARATION OF KENNETH BLACK IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the
form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August
7, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lane K Bogard**    lbogard@lbinsolvency.com,
dhaberbush@lbinsolvency.com,ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,haberbush.assistant@gmail.com,vhaberbu
sh@lbinsolvency.com,jscarborough@lbinsolvency.com,jborin@lbinsolvency.com
- **David R Haberbush**    dhaberbush@lbinsolvency.com,
ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,vhaberbush@lbinsolvency.com,haberbush.assistant@gmail.com,jborin@l
binsolvency.com
- **Vanessa M Haberbush**    vhaberbush@lbinsolvency.com,
dhaberbush@lbinsolvency.com,ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,haberbush.assistant@gmail.com,jborin@l
binsolvency.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **August 7, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will</u>
<u>be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 7, 2018**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street,
Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 7, 2018 | Alexander S. Bostic | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

Larry M Arnold
Cummins & White, LLP
2424 S E Bristol Street Ste 300
Newport Beach, CA 92660-0757

Scott R Carpenter
Cummins & White LLP
2424 S.E. Bristol St Ste 300
Newport Beach, CA 92660

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**